# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| COLUMBIA RODGERS, § | | |
| TDCJ #1536699 § | | |
| § | | |
| Plaintiff, § | | |
| v. § | Civil Action No. 3:09-CV-2025-BF | |
| § | | |
| ROGER MARQUARDT et al § | | |
| § | | |
| § | | |
| Defendant. § | | |

## MEMORANDUM OPINION AND ORDER

This is a consent case before the United States Magistrate Judge. A Motion for Summary Judgment (Doc. 91) filed by Robert Marquardt, Stephen McAdams, David Driskell, Terry Wiktorik, Richard Shufelt, Frederic Tunaitis, Kenneth Smith, Christine Hogan, Lonnie Bratcher, David Hearne, Daniel Simpson, Nadine Jackson, Belinda Salazar, Alvin Johnson, Ivan Martinez, Cody French, Oscar Mumaugh, Dawn Tunaitis, Enrique Perez, Jr., William Gay, and Nathan Duran ("Defendants") is before the Court for consideration. The time for Plaintiff to respond to the Motion has expired, and Plaintiff has failed to file a response

Plaintiff is an inmate of the Texas Department of Criminal Justice-Institutional Division and is proceeding *pro se* and *in forma pauperis*. The Court must construe the allegations in the complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam); *Sec. & Exch. Comm'n v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam). The terms of 28 U.S.C. § 1746 govern verification of an unsworn complaint. A plaintiff may declare under penalty of perjury that the factual allegations contained in the pleading are true and correct. *See* 28 U.S.C. § 1746. The factual allegations of the verified complaint are endowed with the evidentiary force of an affidavit. *Id*.

When a *pro se* plaintiff properly executes a complaint or other pleading which calls for a declaration in conformity with 28 U.S.C. § 1746, the plaintiff's statements are transformed from mere allegations of a pleading into specific facts as if they were in an evidentiary affidavit. *Hart v. Hairston*, 343 F.3d 762, at 765 (5th Cir. 2003). Therefore, a plaintiff's failure to proffer evidentiary materials directly in opposition to a defendant's motion does not mandate the entry of summary judgment in favor of the defendant. *Id*.

Plaintiff has filed one verified complaint. In this case, the Court will exercise its discretion to consider Plaintiff's verified complaint as competent summary judgment proof. *See Skotak v. Tenneco Resins, Inc.*, 935 F.2d 909, 915 n.7 (5th Cir. 1992); *Bookman v. Shubzda*, 945 F.Supp. 999, 1003 (N.D. Tex. 1996) (Fitzwater, J.).

**Background**

Plaintiff Columbia Rodgers ("Plaintiff" or "Rodgers") is an inmate of the Texas Department of Criminal Justice-Institutional Division at the Sanders Estes facility in Venus, Texas, operated by Management & Training Corporation ("MTC"). Plaintiff sues Defendants under 42 U.S.C. § 1983, alleging a federal civil rights claim. Specifically, Plaintiff claims that: (1) Defendants violated his right to a safe prison environment by retaliating against him for filing grievances; (2) he was sexually harassed and physically assaulted by Defendant Duran; and (3) Defendants were deliberately indifferent to his health and safety in violation of the Eighth Amendment. (Compl. 5-15.)

Defendant contends that summary judgment is proper because the evidence in the record fails to raise a genuine issue of material fact as to whether: (1) any Defendant infringed Plaintiff's Eighth Amendment Rights; (2) any Defendant infringed Plaintiff's Fourth Amendment Rights; (3) Plaintiff

2

suffered any injury proximately cause by such infringement; and (4) any of the Defendants adopted or maintained a policy or practice that was the direct cause of any denial of Plaintiff's constitutional rights.

## Facts of the Case[1]

Plaintiff is an inmate at the Sanders Estes Prison Unit in Venus, Texas. Plaintiff's complaints about his incarceration initially arose after he began work in the kitchen for lunch duty on or about January 25, 2009. (Doc. 93-1, p. 7). Defendant Nathan Duran was a supervising officer for that shift. (Doc. 93-1, p. 7). A routine strip search was performed at the end of the kitchen shift due to the prisoners' access to weapons and contraband. (Doc. 93-2, p. 3). Officer Duran had the inmates undress in an area where women correctional officers and kitchen staff could pass through. (Doc. 93-1, pp. 7-8). Duran never touched Plaintiff or the other inmates. (Doc. 93-1, p. 8).No other named Defendant, other than Duran, was involved in this incident. (Doc. 93-1, p. 24).

Plaintiff verbally complained to Defendant Adams about the way the strip search was conducted. Although there is no record of this, Plaintiff claims he filed a Step 1 grievance in January. (Doc. 93-2, p.5). Plaintiff also requested that he be transferred from the kitchen. (Doc. 93-1, p. 10). Plaintiff's request was granted, he was transferred from kitchen duty, and he was never subjected to another strip search by Duran. (Doc. 93-1, pp. 10-11; Doc. 93-2, p. 3).

In May 2009, Plaintiff filed a grievance regarding the strip search incident, and he also filed a request for protection from Duran. (Doc. 93-2, p. 5). On one occasion, Plaintiff's cell door was opened around 2:00 AM and the lights were turned, and Duran was standing right outside Plaintiff's

---

[1]The facts are presented as Plaintiff's version of events. Although Defendants dispute Plaintiff's version of events, they contend they are entitled to summary judgment even if the facts are as Plaintiff presents them. Because Plaintiff's complaint offers only allegations, the facts have been compiled from Plaintiff's deposition. Where necessary, these facts are supplemented by documents provided in Defendants' briefs.

3

cell. (Doc. 93-1, p. 13).

In June 2009, Plaintiff complained to Defendant Wiktorik that Duran smiled at him and told him he had "a nice ass." (Doc. 93-1, p. 14; Doc. 93-2, p. 9). On June 14, 2009, Officer Duran entered Plaintiff's cell as if he was performing a security check. (Doc. 93-1, p. 14). As Plaintiff began to climb down from the upper bunk, Officer Duran pushed Plaintiff and caused him to cut his shin on a lock. (Doc. 93-1, pp. 14-15; Doc. 93-2, p. 11). Plaintiff asked for medical attention on June 26, indicating that his ankle or leg was swollen, but there is no mention of the alleged assault in his medical record. (Doc. 93-2, pp. 14-20). Plaintiff filed his grievance about the incident a few days later. (Doc. 93-1, p. 11). No named Defendant, other than Duran, was involved in this incident. (Doc. 93-1, p. 24).

On July 1, 2009, Plaintiff was brought in to provide details regarding his assault claim, but he refused to assist with the MTC investigation. (Doc. 93-2, p. 20). On August 13, 2009, Duran opened Plaintiff's cell door at 2:00 AM. (Doc. 93-1, p. 15).

Defendant Duran resigned his position at the Sanders Estes Unit in October 2009 after he found a new job. (Doc. 93-2, p. 3). Plaintiff admits that other than the five incidents described above (the strip search, the door opening twice, the push, and the "nice ass" comment), there is no other actual conduct by Duran that is at issue in this matter. (Doc. 93-1, p. 17).

Plaintiff also refers to three other incidents in his Complaint. The first two incidents relate to occasions in 2010 when correctional officers, who are not parties to this lawsuit, woke Plaintiff up at 2:30 AM to prepare breakfast when he was not actually on breakfast duty. (Doc. 93-1, p. 22; Doc. 93-2, p. 3). Lastly, Plaintiff complains that in February 2010, Defendant Lt. Hearne used a curse word when he told Plaintiff to pull up his pants. Plaintiff filed a grievance about this, and Lt.

4

Hearne was counseled regarding use of inappropriate language. (Doc. 93-1, p. 21; Doc. 93-2, pp. 3; 31-33)

## **Standard of Review**

Summary judgment is appropriate when the pleadings and the evidence show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986); *Melton v. Teachers Ins. & Annuity Assoc. of Am.*, 114 F.3d 557, 559 (5th Cir. 1997). The applicable substantive law identifies those facts that are material, and only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue of fact if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Society of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners, Inc.,* 41 F.3d 223, 226 (5th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 712 (5th Cir. 1994). Where the nonmoving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing an absence of evidence in support of the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once a properly supported motion for summary judgment is presented, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Elliott v. Lynn*, 38 F.3d 188, 190 (5th Cir. 1994) (citing *Anderson*, 447 U.S. at 249). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex*, 477 U.S. at 322. The Court will consider the record in the light most favorable to Plaintiff. *Taita Chem. Co. v. Westlake Styrene Corp.,* 246 F.3d 377, 385 (5th Cir. 2001). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion must be denied. *Anderson*, 477 U.S. at 250. However, a failure on the part of the nonmoving party to offer proof concerning an essential element of his case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists. *Adams v. Travelers Indemnity Co.*, 465 F.3d 156, 164 (5th Cir. 2006).

## Analysis

Plaintiff contends that his Fourth and Eighth Amendment rights were violated because: (1) he was both sexually harassed and physically assaulted by Defendant Duran; and (2) Defendants improperly and inadequately responded to his grievances. (Doc. 93-1, pp. 20-22). Although he claims he was in fear for his life, Plaintiff does not identify any specific activities or communications by any members of the MTC staff to support that allegation, other than the specific instances of conduct described above. (Doc. 93-1, pp. 25-26; Doc. 93-2, p. 3).

The terms of 42 U.S.C. § 1983 create a cause of action against every person who, under color of law, subjects, or causes to be subjected, any citizen to the deprivation of rights, privileges, or immunities secured by the United States Constitution and laws. 42 U.S.C. § 1983; *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). Private corporation employees retained to perform prison official duties pursuant to a contract with the State, such as the Sanders Estes Defendants, are considered state actors for the purpose of this provision. *West v. Atkins*, 487 U.S. 42 at 50 (1988).

### Summary Judgment with Respect to Strip Search Allegations

On February 7, 2009, Defendant Duran conducted a strip search of Plaintiff and other

offenders at the Sanders Estes facility. *Appendix p. 4*. Plaintiff is not contending that the search itself was a violation of his rights; rather, he complains about the manner in which the search was conducted. Plaintiff alleges that after ordering the inmates to strip in an area where female MTC employees had access, Defendant Duran stared at the naked inmates for 8-15 minutes and never checked the offenders or their clothing for weapons or contraband. (Doc. 93-1, p. 7-8). Plaintiff claims that this conduct constitutes sexual harassment. Accepting the facts as Plaintiff describes them, Defendants are entitled to summary judgment with respect to these claims.

"A prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated. He thus loses those rights that are necessarily sacrificed to legitimate penological needs." *Moore v. Carwell*, 168 F.3d 234, 236-237 (5th Cir. 1999). In the Fifth Circuit, "prisoners retain, at best, a very minimal Fourth Amendment interest in privacy after incarceration." *Oliver v. Scott*, 276 F.3d 736, at 744 (5th Cir. 2002). The Fifth Circuit has held that strip searches carried out in non-secluded areas of the prison and in the presence of prison employees of the opposite sex are not unconstitutional. *Elliott v. Lynn*, 38 F.3d 188, 190-92 (5th Cir. 1994). Therefore, the fact that female employees could have possibly observed the search does not constitute an infringement of Plaintiff's Fourth Amendment rights.

The Fourth Amendment requires that "searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed." *United States v. Lilly*, 576 F.2d 1240, 1244 (5th Cir. 1978). In the prison context, the standard for an exaggerated or excessive means of enforcing security is quite high. *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 558 (1979) (holding visual strip searches reasonable to confiscate weapons and contraband); *Elliot*, 38 F.3d 188, 191 (holding a strip search justified to seize weapons and contraband). In the instant case,

7

Plaintiff admits that he was not physically touched during the search and that he was able to cover himself with his hands. (Document 93-1, p. 7-8). Given the increased access to weapons and contraband in the kitchen environment, a strip search after the kitchen duty shift was reasonable. Therefore, the search Plaintiff was subject to did not meet the exaggerated or excessive standard and was not a violation of his Fourth Amendment rights. *Bell*, 441 U.S. 520, 559. Accordingly, Defendants are entitled to summary judgment regarding Plaintiff's strip search claims.[2]

## Summary Judgment with Respect to Use of Force Allegations

The Supreme Court held that "after incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (U.S. 1986). The test for wanton pain and suffering is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). This inquiry has an objective component that focuses on the amount of harm inflicted and a subjective component that focuses on the mental state of the alleged wrongdoer. *Hudson v. McMillan*, 503 U.S. 1, at 7-8 (1992). Regarding the objective inquiry, the first relevant factor is the extent of the injury suffered. *Id*. at 6. Plaintiff's injuries need not have been severe to be entitled to relief, but they must be more than *de minimis*. *Siglar v. Hightower*, 112 F.3d 191, at 193 (5th Cir. 1997).

Plaintiff seems to argue that the manner in which the February 7, 2009 strip search was conducted violated his Eighth Amendment rights. Plaintiff also contends that on June 14, 2009,

---

[2] Plaintiff's sexual harassment claim under § 1983 must also fail. "Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983).

Defendant Duran entered Plaintiff's cell in a manner that led Plaintiff to believe that Duran was conducting a room search. (Doc. 93-1, p. 14.) Plaintiff claims that while he attempted to climb down from his bunk, Defendant Duran shoved him into the locking mechanism of the cell door. (Doc. 93-1, p. 14.) The locking mechanism cut Plaintiff's shin. (Doc. 93-1, p. 14.) Plaintiff alleges that following this contact, Defendant Duran exited the cell and closed the door while Plaintiff shouted for help. (Doc. 93-1, p. 15.)

Using Plaintiff's description of the facts, Plaintiff has not provided any evidence that force was applied maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline. Plaintiff admits that during the strip search, he wasn't touched in any way by any Defendant and suffered no injury. During the cell search incident, Plaintiff was pushed by Defendant Duran and suffered a small, approximately one-inch long, abrasion on his shin. The medical records indicate that Plaintiff had the ability to seek medical treatment at the Sanders Estes facility but declined to do so. (Appendix to Defendant Adams' Brief, 72-74). There is no record that Plaintiff sought medical attention for his injury until June 26, 2009, twelve days after the alleged incident. (Doc. 93-2, p. 14.) On July 1, 2009, Plaintiff refused to provide any details to MTC staff regarding the alleged incident with Defendant Duran. (Doc. 93-2, p. 20.) Plaintiff applied neosporin to the cut for a week, and it healed on its own some time later. (Doc. 93-1, p. 19.)

"The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force." *Hudson*, 503 U.S. 1, at 9-10. In *Siglar*, the Fifth Circuit held that a sore, bruised ear that lasted for three days was *de minimis*. *Siglar*, 112 F.3d at 193. On the other hand, in *Gomez*, the Fifth Circuit held that cuts, scrapes, contusions to the face, head and body resulting from an inmate being knocked down, punched, and kicked were more than *de minimis*. *Gomez v. Chandler*, 163 F.3d 921, at 924-25 (5th Cir. 1999). Plaintiff's injury

9

is more akin to those suffered in *Siglar* than *Gomez*. Taking the facts as Plaintiff describes them, the extent of Plaintiff's injury is insufficient to satisfy the objective branch of the malicious and sadistic test. Accordingly, Defendant's use of force does not qualify as an infliction of wanton pain and suffering. Therefore, the alleged use of force was not in violation of Plaintiff's rights under the Eighth Amendment, and Defendants are entitled to summary judgment in this issue.

## Summary Judgment with Respect to the Retaliation Allegations

Plaintiff's complaint repeatedly alleges that Defendant Duran retaliated against him for filing a grievance about the February 7, 2009 strip search. (Compl. 5-15). Specifically, Plaintiff contends: (1) that "[Defendant Duran] sexually harassed/assaulted and later retaliated against Plaintiff Rodgers;" (2) that "as part of his retaliation CO Duran physically assaulted the Plaintiff in his cell;" and (3) that "Duran would enter my cell or pop the lock on my cell at all hours of the night." (Compl. 13). From his complaint, it can be inferred that Plaintiff alleges that Defendant Duran violated his right to be free from retaliation for the exercise of his first amendment right of access to the courts.

"To state a valid claim for retaliation under Section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (citing *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999)).

In order to establish retaliatory intent, Plaintiff "must produce direct evidence of motivation or . . . allege a chronology of events from which retaliation may plausibly be inferred." *Id*. at 1166. The February 7, 2009 strip search is the origin of Plaintiff's retaliation claim. Plaintiff contends that after he filed a grievance regarding that incident, Defendant Duran retaliated. Because the alleged lewd comment, door opening, and pushing incidents all occurred after Plaintiff filed his grievance,

it is chronologically plausible that Defendant Duran intended to retaliate.

To constitute a retaliatory adverse act under § 1983, the conduct must be "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). According to the Fifth Circuit, "[this] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroil[ing] themselves in every disciplinary act that occurs in state penal institutions." *Id* (internal quotations omitted).

Taking the facts as Plaintiff describes them, there is no evidence of any retaliatory act that rises to the level required by the Fifth Circuit. In *Morris*, the Fifth Circuit held that being transferred to a more dangerous prison qualifies as a retaliatory adverse act while experiencing discomfort for a few days is *de minimis*. *Morris*, 449 F.3d at 687. Plaintiff's first allegation of retaliation involved the cell inspection incident when Plaintiff suffered a small abrasion on his leg.Plaintiff's other retaliation claim involved Defendant Duran and two other correctional officers who aren't party to this suit, opening Plaintiff's cell door in the middle of the night. Duran admitted that he did accidentally unlock and open Plaintiff's cell door. (Doc. 93-2, p. 28). At most, these incidents caused Plaintiff temporary discomfort.

Plaintiff's claim does not state a retaliatory adverse act as understood under Fifth Circuit precedent pursuant to **§** 1983 because Plaintiff was not deterred from exercising his constitutional rights. Plaintiff frequently availed himself of the MTC grievance system and requested protection from prison authorities. (Doc. 93-1, p. 12) The record shows that MTC conducted investigations to address each of Plaintiff's filed grievances. (Doc. 90, pp. 11; 14-22; 24; 33; 35-38; 47-50; 53; 58; 63-77; 80-83; 92-104; 111-15; 125-28). After the February 7, 2009 strip search, Plaintiff asked for, and was granted, a reassignment away from the kitchen detail where Defendant Duran was stationed.

(Doc. 93-1, p. 13). Therefore, Plaintiff's retaliation claim is invalid and summary judgment in favor of the Defendants is in order.

## Summary Judgment with Respect to Failure to Protect Allegations

In his complaint, Plaintiff alleges that the Defendants failed to provide a safe prison environment. Plaintiff contends he should have been protected from the incidents of retaliation that allegedly occurred after he filed a grievance about the February 7, 2009 strip search. With respect to all of the named Defendants, other than Duran, Plaintiff's complaint is that when he came to them for protection, they referred him to the grievance system instead of personally doing something to help him. (Doc. 93-1, p. 27; Doc. 93-2, p. 3). Plaintiff's complaints were investigated, and they were deemed unfounded. (Doc. 93-2, pp. 4-33). Specifically, Plaintiff argues that: (1) Defendant Marquardt failed to properly train supervisory staff and employees to respond to allegations of sexual harassment; (2) Defendants were deliberately indifferent to the Plaintiff's safety; (3) Defendant Shufelt failed to properly investigate Plaintiff's filed grievances; and (4) Defendant Dawn Tunaitis, as the compliance officer, was deliberately indifferent to Plaintiff's safety by knowing of, and not correcting, the behavior of the other MTC employees. (Compl., p. 5-15).

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to take reasonable measures to ensure the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Supreme Court has held that prison officials only violate this duty when: (1) a sufficiently serious deprivation has occurred; and (2) the prison official acts with "deliberate indifference" to inmate health or safety. *Id.* at 834. The Supreme Court has equated "deliberate indifference" to criminal law recklessness, which requires a person charged with recklessness to have had actual knowledge of a risk of harm. *Id.* at 836.

The deliberate indifference standard is an "extremely high standard to meet." *Gobert v.*

*Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prison official acts with deliberate indifference "only if (1) he knows that inmates face a substantial risk of serious bodily harm and (2) he disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. 825, at 847. Taking the facts as Plaintiff presents them in his complaint, Plaintiff has failed to carry this burden. Plaintiff admits that the only time any Defendant touched him inappropriately was the incident when Defendant Duran allegedly pushed him into the cell lock causing Plaintiff to suffer a small abrasion. Plaintiff's multiple assertions that he feels endangered are insufficient to establish any actual risk of serious harm.

Even if Plaintiff had established the existence of a substantial risk of serious harm, he failed to meet the threshold for proving deliberate indifference. Plaintiff's grievances and conversations with prison officials were sufficient to make them aware of the situation, but the record indicates that Defendants acted on Plaintiff's grievances where appropriate. Defendant Duran was a correctional officer at the Sanders Estes facility for many years. He had no history of using deadly or excessive force with any prisoners. (Doc. 93-2, p. 3). There was nothing in his history or behavior that supported the allegation that he intended to cause Plaintiff any harm, let alone serious bodily harm. (Doc. 93-2, p. 3). Even so, MTC: (1) required Duran to conduct one-by-one strip searches in the future; (2) provided strip search training to all kitchen staff; and (3) granted Plaintiff's request to be transferred away from kitchen duty. (Doc. 93-1, pp. 10-11; Doc 93-2, p. 3). Also, Defendants investigated each of the grievances Plaintiff filed and deemed them unfounded. (Doc. 90, pp. 11; 14-22; 24; 33; 35-38; 47-50; 53; 58; 63-77; 80-83; 92-104; 111-15; 125-28). The record indicates Defendants were responsive to Plaintiff's grievances, not indifferent. Therefore, Defendants are entitled to summary judgment regarding Plaintiff's allegations of failure to protect.

## **Conclusion**

The Motions for Summary Judgment are hereby **GRANTED**. Plaintiff's claims against Defendants are dismissed with prejudice for failure to state a claim.

SO ORDERED, June 20, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE